Cornelia J. Kellum and Alice Corr, Respondents, *v.* The Mission of the Immaculate Virgin for the Protection of Homeless and Destitute Children, Appellant.

*Ejectment — proof of possession and of statements made by one taking possession — res gestæ — declarations against interest — impeachment by a party of a witness called by him.*

In an action of ejectment to recover certain beach lands, the plaintiffs, for the purpose of proving possession within twenty years, called one Vernam, who claimed under a title similar to that of the plaintiffs. Vernam testified that he entered upon the land in question in 1887 and erected a small building thereon which was occupied by his employees.

*Held*, that it was error to refuse to allow a witness for the defendant to state what was said to him by Vernam at the time the latter erected the house;

That such testimony was admissible as part of the *res gestæ* or as a declaration against interest.

*Semble*, that a party may not impeach the general character of one of his own witnesses or prove contradictory statements by such witness or give evidence contradicting that of the witness, where the only effect of the contradiction is to impeach the witness and not to give material evidence upon any issue of the case.

Appeal by the defendant, The Mission of the Immaculate Virgin for the Protection of Homeless and Destitute Children, from a judg-

ment of theSupreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Queens on the 27th day of December, 1901, upon the verdict of a jury rendered by direction of the court after a trial at the Queens County Trial Term, adjudging that the plaintiffs are the owners in fee of an equal undivided one-half part of the premises in question, and are entitled to recover possession thereof from the defendant. ·

*Henry A. Monfort* and *William J. Fanning,* for the appellant.

*Henry A. Powell* and *Arthur M. Sanders,* for the respondents.

JENKS, J.:

This is an action of ejectment from lots 4 and 5, in the second division of the beach, at Far Rockaway, Queens county. At the close of the case the court directed a verdict for the plaintiffs.

The plaintiffs complained that the lands were set off in 1808 by a judgment in partition to Thomas Bannister and Rachael, his wife; that plaintiffs as the heirs of one of the children of Thomas and Rachael were entitled to an undivided one-half interest in the lands as tenants in common with the heirs or the grantees of the heirs of Alice McNeil, born Bannister, the other child of the said Thomas and Rachael Bannister. The plaintiffs offered proofs of these allegations, and, to show possession within twenty years before the beginning of this action (*Greenleaf* v. *B., F. & C. I. R. Co.,* 141 N. Y. 395), called Mr. Vernam. This witness testified that he obtained from Mr. McNeil a contract of sale of McNeil's interest in the premises, and that a deed thereof was subsequently made to Mr. Perry in the interest of the wife of the witness. He further testified that he went upon lots 4 and 5 in 1887, put a small building thereon, which was subsequently enlarged, and that it was occupied by certain of his employees successively, among them, by Cronin. The defendant called Mr. Rheinhardt, who testified to his familiarity with the lands, to his acquaintance with Mr. Vernam, that he held conversation with Mr. Vernam at the time the latter brought lumber there and subsequently set up the Cronin house, and that the conversation was had within a few weeks from the beginning of the building thereof. He was asked to state the conversation, but this was excluded under objection (and exception) that it was immate-

rial, irrelevant, incompetent and collateral; that upon this point the defendant had made Mr. Vernam its own witness and was, therefore, bound by what he had said, and also that what was said by Mr. Vernam was not binding upon the plaintiffs.   The learned counsel for the defendant thereupon stated that the question, was not put to contradict, but to characterize by his own statements the possession of Mr. Vernam.   The same witness also testified that he had another conversation with Mr. Vernam as to the building of the Cronin house, before the house was put up, and that part of the lumber was on the ground at the time; but this was rejected under a similar objection and exception.   I think that the testimony was admissible as part of the *res gestœ,* or as a declaration against interest.   (*Pitts* v. *Wilder,* 1 N. Y. 525; Sedg. & Wait Tr. Title Land, § 811; *Abeel* v. *Van Gelder,* 36 N. Y. 513; *Chadwick* v. *Fonner,* 69 id. 404; *Spaulding* v. *Hallenbeck,* 35 id. 204; *Lyon* v. *Ricker,* 141 id. 225; *Baird* v. *Slaight,* 8 N. Y. Supp. 603; *Leary* v. *Corvin,* 63 App. Div. 151.)   It must be remembered that Vernam stood in the shoes of the cotenant of the plaintiffs, and that they, in effect, relied upon the acts of Vernam to make out their *prima facie* case of title in order to maintain the action.   For this purpose they gave evidence of Vernam's acts under a title similar to their own.   Logically, their claim of title was under him, *i. e.,* by virtue of his acts which established possession.   While thus relying upon his acts, they cannot shut out his declarations or admissions made at the time which might show the character thereof. Thus, in *Jackson* v. *Cole* (4 Cow. 587) the court (at p. 594) say: "But where the party in possession has not established a legal title, his declarations, and the declarations of those under whom he claims, as to the nature and extent of their interest, or as to the right of the plaintiffs, have repeatedly been received in evidence.   Thus, in *Jackson* v. *Bard* (4 John. 230) declarations of a party under whom the defendant claimed, showing a distrust of his own right, and an admission of the title of the plaintiff, were held admissible.   So, also, in *Jackson* v. *Belknap* (12 John. 96) and in *Jackson* v. *M' Vey* (18 John. 330) the defendant was allowed to give evidence of the declarations of one of the lessors, to show under what title he held." (See, too, *Sheldon* v. *Van Slyke,* 16 Barb. 26.)   Suppose that Vernam, although he had the deed of the McNeil interest when he

entered upon the beach and set up a shanty or some such flimsy fabric, had made declarations or admissions at the time which showed a distrust of his right, or a concession of defendant's better right, or a surmise that whoever the owner was there would be no objection to such slight and apparently temporary invasion of a sand beach, was it not the right of the defendant to show this in order to show the *res gestæ* of the entry and occupation? In *Colvin* v. *Burnet* (17 Wend. 564, 568) the court say : " It is well known that a single lisp of acknowledgment by the defendant, that he claims no title, fastens a character upon his possession which makes it unavailable for ages." It is true that Mr. Vernam was asked on cross-examination as to one conversation with Mr. Rheinhardt, which had not been the subject of direct examination, and he answered : " I don't think that would give a fair statement of any conversation that I might have had with him. I do not recollect what the conversation was. I do not recollect that I had any conversation with Captain Rheinhardt and I am not prepared to say that I did not have the conversation which you described." Assume that Mr. Vernam was the defendant's own witness, and yet the answers of Vernam did not preclude the defendant from calling Mr. Rheinhardt. Indeed, Mr. Vernam did not deny that he had the conversation, so there really was not a contradiction. Impeachment of one's own witness is prohibited (1) to impeachment of general character ; (2) proof of prior contradictory statements by him ; and (3) contradiction where the only effect is to impeach and not to give material evidence upon any issue of the case. (*Becker* v. *Koch*, 104 N. Y. 394.) For the same reasons it was error to exclude the question put to Rheinhardt as to what Vernam said with reference to the placing of the Cronin house upon the property.

As I cannot conclude that if the learned court had admitted the testimony it would not have heeded the request of the defendant for a submission to the jury, I think that there should be a new trial.

GOODRICH, P. J., BARTLETT, WOODWARD and HOOKER, JJ., concurred.

Judgment reversed and new trial granted, costs to abide the event.